# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TEAMSTERS LOCAL 886, ) <br> AFFILIATED WITH THE ) <br> INTERNATIONAL BHD ) <br> OF TEAMSTERS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SYSCO OKLAHOMA, LLC, ) <br> ) <br> Defendant. ) | CIV-20-162-R |

## ORDER

Before the Court is Plaintiff's Motion for Issuance of Temporary Restraining Order and Preliminary Injunction (Doc.No. 6). Defendant responded in opposition to the motion. (Doc.No. 17).[1] On April 2, 2020, the Court conducted a telephonic conference with counsel and heard argument on the motion. Upon consideration of the parties' submissions, the Court finds as follows.

The Court takes the following facts from Plaintiff's Complaint and its Motion. Plaintiff, Teamsters Local 886 ("Local 886"), is a not-for-profit labor organization and alleges it is the bargaining agent under the National Labor Relations Act ("NLRA") for approximately one hundred and twenty employees of Sysco Oklahoma. The parties executed a collective bargaining agreement ("CBA") effective from March 12, 2016 through March 31, 2020, as well as a Participation Agreement, whereby Sysco participated

---

[1] On March 30, 2020, Defendant filed a Motion to Dismiss (Doc.No. 14). Plaintiff's response thereto is currently due not later than April 20, 2020.

in and made contributions to the Michigan Conference of Teamsters Welfare Fund ("Welfare Fund"), which provides health benefits to members of the bargaining unit.

On December 11, 2019, Plaintiff filed an unfair labor practices charge with the National Labor Relations Board ("NLRB"), alleging Sysco refused to bargain in good faith, making unilateral changes to the unit members' terms and conditions of employment by not permitting the Union access to its members beginning in October 2019. Thereafter, on December 19, 2019, a decertification petition was filed with Region 14 of the NLRB.[2] Tom Ritter reached out to Sysco on December 31, 2019 to initiate negotiation of a new CBA.

On January 9, 2020, Local 886 filed another unfair labor practice charge against Sysco, asserting unlawful discharge of a member of the bargaining unit because of his activities on behalf of the Union. The charge further alleged that since July 2019 Defendant had permitted and assisted antiunion employees with soliciting employees to sign the decertification petition, despite the company's own no solicitation rule.

No negotiations have occurred between Local 886 and Sysco with regard to a new CBA. To the contrary, Plaintiff contends that on January 19, 2020, Defendant repudiated the current CBA, in part by posting a notice to employees represented by Local 886 stating:

> We have received a petition signed by a majority of associates represented by Teamsters Local Union No. 886 ("Union"). The petition states that these employees no longer desire to be represented by the Union. It also asks us to withdraw recognition of the Union effective immediately.
> Sysco Oklahoma L.L.C. informed the Union on January 19, 2020, that effective immediately the Company is withdrawing recognition from the Union.

---

[2] Plaintiff contends that Sysco sponsored the decertification petition and therefore filed a motion to block the decertification election, which NLRB Region 14 granted.

Complaint (Doc.No. 1, ¶ 10). That same day the Company informed Tom Ritter, President/Business Manager for Local 886, of the Company's decision to withdraw recognition. Finally, Sysco Oklahoma posted an announcement for health insurance enrollment, a benefit previously administered through the Welfare Fund, and conveyed information to members of the bargaining unit about the impending changes to monthly insurance premiums, deductibles, and co-payments.[3]

As a result of the January 19, 2020 notice regarding insurance enrollment and the cost of coverage, Plaintiff contends that various employees were forced to choose more expensive, less comprehensive coverage. *See* Doc. Nos. 6-2, 6-3, 6-4, 6-5, 6-6. Plaintiff identifies one employee, Erik Becerra, who concluded the new coverage was too expensive and therefore is relying on his status as a Native American for any anticipated medical needs, presumably through the Indian Health Service. In addition to offering enrollment for health benefits outside the Welfare Plan Plaintiff alleges that Defendant threatened to stop paying into the Welfare Plan. Plaintiff notes that Defendant made the payment required on March 1, 2020, but that no payment has been tendered for the next period, which began on March 29, 2020.

> Citing the above, Plaintiff requests an Order requiring Sysco to:
>
> maintain the status quo ante (before the violation) by continuing its full contributions to the MCTWF plan so that no member of the bargaining unit or eligible family member suffers the loss or diminution of his or her employment related health care coverage under the MCTWF.

Doc.No. 6, p. 20.

---

[3] Plaintiff alleges various other acts of repudiation undertaken by Defendant which generally are not relevant to the instant motion.

In support of the instant motion, Plaintiff originally relied upon both the LMRA, 29 U.S.C. § 185, and ERISA, 29 U.S.C. § 1132. During the Court's telephonic conference with counsel, Plaintiff's counsel focused on § 301 of the LMRA, recognizing issues of standing with regard to the ERISA claim. Accordingly, the Court confines its consideration to whether injunctive relief is appropriate to this single claim.

> Under Rule 65 of the Federal Rules of Civil Procedure, a party seeking a preliminary injunction must show: "(1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." [*First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017)](quoting *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016)).

*DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018). The Tenth Circuit has made it clear that "because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009)(internal quotation marks and citation omitted). Additionally, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

Reiterating an argument presented in its motion to dismiss, in response to the motion for injunctive relief Defendant argues that the NLRB has primary jurisdiction over this matter and the Court should defer resolution of the issue to the NLRB.[4] Although not

---

[4] As set forth above, Plaintiff filed an unfair labor charge in January 2020 asserting that Defendant was acting

directly on point, the Court find that this issue indirectly casts doubt on Plaintiff's likelihood of success on the merits.

Section 301 of the LMRA generally confers jurisdiction on federal district courts in "[s]uits for violations of contracts between an employer and a [union]." 29 U.S.C. § 185(a).[5] Here, Plaintiff asserts, that by failing to tender the payment to the Welfare Fund for health care benefits due on March 29, 2020, Defendant has breached the CBA. However, the CBA expired two days after the payment was due. As a result, it is not the contract that covers Defendant's behavior moving forward, rather, at best, the National Labor Relations Act, 29 U.S.C. § 158(a)(5), as cited by Plaintiff in the Complaint, mandates that the Defendant maintain the status quo until either a new CBA is negotiated or the parties reach an impasse.[6] Accordingly, an employer has an obligation to maintain the "status quo" following expiration of a collective bargaining agreement until its negotiations with the representatives of its employees have concluded or reached an impasse.

---

unilaterally to change the terms and conditions of employment. The posture of the case has changed somewhat since January in that the CBA expired on March 31, 2020, and Plaintiff relies on Defendant's statutory obligation to maintain the status quo under the NLRA rather than a contractual obligation, although Plaintiff relies on the breach of contract provision of 29 U.S.C. § 185 as the basis for Count 2 of the Complaint. The Court further notes that according to Plaintiff's allegations in paragraph 6 of the Complaint, Defendant's obligation to participate in and make contributions to the Welfare Plan was part of the Participation Agreement, not the CBA.

[5] The Court has no concern that it lacks subject matter jurisdiction over Plaintiff's claims, specifically Plaintiff alleges a number of violations of the LMRA, including the claim at issue in the instant case.

[6] 29 U.S.C. § 158(a)(5) provides that "[i]t shall be an unfair labor practice for an employer . . . to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title." The Supreme Court in *NLRB v. Katz*, 369 U.S. 736, 743 (1962) held that an employer violated Section 8(a)(5) by unilaterally changing conditions of employment which were under negotiation. Unilateral changes in pension fund arrangements provided by an expired CBA constitutes such an unfair labor practice. *Laborers Health and Welfare Trust for Northern Calif. v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539, 544, n. 6 (1988).

In *Laborers Health & Welfare Trust for N. Calif. v. Advanced Lightweight Concrete Co.,* 484 U.S. 539 (1988), the Supreme Court concluded that ERISA does not apply to an employer's obligation under § 8(a)(5) of the NLRA to maintain the status quo upon expiration of a CBA pending negotiation of a new agreement or an impasse. The Court held that the duty was statutory not contractual and further, "whether an employer's unilateral decision to discontinue contributions to a pension plan constitutes a violation of the statutory duty to bargain in good faith is the kind of question that is routinely resolved by the administrative agency with expertise in labor law. . . . In cases like this, which involve either an actual or 'arguable' violation of § 8 of the NLRA, federal courts typically defer to the judgment of the NLRB." *Id.* at 552. In *Trustees of Colo. Pipe Indus. Pension Tr. v. Howard Elec. & Mech. Inc.*, 909 F.2d 1379 (10th Cir. 1990), the Tenth Circuit summarized the holding, noting that under ERISA, "original federal jurisdiction was limited to actions for contractual contributions, contributions owed solely as a result of a noncontractual statutory duty to maintain the status quo are properly sought initially in an action before the NLRB." *Id.* at 1384.

Accordingly, it appears to the undersigned that Plaintiff's § 301 breach of contract claim will be limited to the period between the due date of the payment to the Welfare Plan and expiration of the Plan by its terms. The obligation to maintain the status quo, to the extent it exists, arises from statute rather than from the parties' contract. On a related note, the underlying issue, and one the parties admit is disputed, is whether Defendant's anticipatory withdrawal of recognition was lawful. *See Johnson Controls*, 368 NLRB 20 (July 3, 2019). From the Court's conference call it is apparent that Plaintiff contends this

case falls outside of *Johnson Controls*, because, as alleged in the January 9, 2020 unfair labor practice charge, Sysco improperly influenced or assisted the employee petition to decertify the Union. However, Plaintiff presented no evidence to the Court with the instant motion that would support a finding that Defendant so interfered.

Additionally, Plaintiff has not established that irreparable harm will occur if the Court denies its request for injunctive relief. Given the evidence that the identified employees either opted to obtain insurance via Defendant or, in Mr. Becerra's case, from Indian Health Services, Plaintiff has not established that any Union member is currently without insurance coverage. The speculation that other unidentified members of the bargaining unit may not have taken the opportunity to obtain insurance does not provide a basis for finding irreparable harm. There is no evidence that an employee was scheduled to receive treatment under the Union health plan but that the cost of treatment under the Sysco plan is prohibitive and therefore treatment has been cancelled.

> Courts have previously held that the loss of health care coverage in labor disputes does not constitute such irreparable harm as to justify issuing a preliminary injunction pending arbitration. *See Auto. Mechs. Local No. 701 v. Larry Faul Oldsmobile*, 524 F. Supp. 5, 7 (N.D.Ill.1980)(granting a motion to dismiss a complaint for an injunction to compel an employer to continue its contributions to the terminated employees' health care benefits during pendency of the arbitration); *see also Local 274, Hotel Employees and Rest. Employees v. Westin Bellevue Stratford*, 633 F.Supp. 869, 870 (E.D.Pa.1986) ("Although petitioner contends that seniority rights and ancillary health and pension benefits will be lost, I view these as easily converted to monetary terms.").

*Local Union 15, Int'l Bhd of Elec. Workers, AFL-CIO v. Exelon Corp.*, 191 F. Supp. 2d 987, 993 (N.D. Ill. 2001).

With regard to the balancing of equities, Defendant presents no evidence or suggestion that it will be injured in any manner if the Court ordered it to pay the March 28, 2020 payment to the Welfare Fund. It is apparent, however, that if Defendant's anticipatory withdrawal of recognition was proper it would not be responsible for the payment, which counsel represented was approximately $150,000.00. Defendant presents no indication that such payment would pose a hardship if the Court granted Plaintiff's request for injunctive relief.[7] Because the Court has found no irreparable injury to Local 886 and because Defendant presents no argument that it will suffer injury if the Court grants Plaintiff's injunction, this factor weighs slightly in favor of Plaintiff.[8]

Finally, the Court must determine whether injunctive relief serves the public interest. While arguably the public interest would be served by entering an injunction in this case, Plaintiff's failure to establish a likelihood of success on the merits and the absence of irreparable harm lead the Court to DENY Plaintiff's Motion.

For the reasons set forth herein, 3rd Motion for Temporary Restraining Order is DENIED.

**IT IS SO ORDERED** this 3rd day of April 2020.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[7] In theory, if the Court granted injunctive relief and Defendant subsequently prevailed, it could recoup its payment from the Welfare Fund. However, the Fund is not before the Court, and therefore the Court would be unable to order the Welfare Fund to return the payment or a portion thereof.

[8] Defendant's balancing argument asserts that Plaintiff should first have to complete the administrative process it initiated by filing unfair labor practice charges. The Court does not interpret Plaintiff's decision to proceed before the NLRB as a factor in weighing the equities.